No. DA 06-0140

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 30

STATE OF MONTANA,

Plaintiff and Respondent,

v.

RAYMOND EVERT,

Defendant and Appellant.

APPEAL FROM:     The District Court of the Eleventh Judicial District,
                 In and For the County of Flathead, Cause No. DC 97-24B,
                 Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Chad Wright, Hooks & Wright, Helena, Montana

        For Respondent:

            Honorable Mike McGrath, Attorney General; Jim Wheelis, Assistant
            Attorney General, Helena, Montana

            Ed Corrigan, County Attorney, Kalispell, Montana

                                    Submitted on Briefs:  December 13, 2006

                                              Decided:  February 7, 2007

Filed:

                    _____
                                     Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Defendant Raymond Evert appeals the District Court's denial of his petition for postconviction relief. We affirm.

¶2 We restate the issue as follows:

¶3 Did the District Court err in dismissing Evert's petition for postconviction relief?

## BACKGROUND

¶4 On January 2, 1997, the State charged Raymond Evert with sexual intercourse without consent. The State specifically alleged that Evert was in violation of § 45-5-503(3)(a), MCA, because the alleged victim could not legally consent. The victim was fifteen and Evert's neighbor. Evert was indigent, so an attorney was appointed to represent him.

¶5 On January 29, 1997, Evert entered into a plea agreement with the State. Evert was to plead guilty to the lesser charge of sexual assault, which carried a lower two-year mandatory minimum and an exception to the mandatory minimum if a court finds that the defendant can be successfully treated in the community. The agreement called for Evert to enter a chemical dependency center in Butte and to obtain counseling in the community. The agreement's references to community treatment and to the State's subsequent sentence recommendations are altered with pen; however, the changes were initialed by the parties. The State specifically agreed, "depending upon [Evert's] attitude and his treatment results," to recommend a sentence consistent with the pre-sentence investigation and sex offender evaluation. Additionally, Evert was entitled to withdraw

2

from the agreement if the State failed to perform its obligations or the court refused to accept his guilty plea, and the State was allowed to withdraw if Evert failed to comply, escaped or made an escape attempt, or if Evert refused to enter a plea of guilty.

¶6    On February 5, 1997, Evert entered a plea of guilty which the District Court accepted. Evert, at the hearing, admitted that the victim was intoxicated and could not consent and acknowledged that he understood, even if he completed treatment, the judge could still impose a prison sentence of up to "one hundred years." Immediately after pleading guilty, Evert was sent to Butte for alcohol treatment. Evert, however, absconded the next day and did not return until he was arrested a month later in Washington State.

¶7    On May 15, 1997, Evert appeared for his scheduled sentencing hearing. The court, however, after discussing the fact that a sex offender evaluation had not been completed, stayed the imposition of sentence and instead ordered a sex offender evaluation be performed. Evert's attorney helped Evert complete the testing and also advised him, in a letter, that he had to take the polygraph test and answer truthfully to get into community-based treatment. Evert did take the polygraph test, and therein admitted to having sexual intercourse with his daughter. Apparently, neither Evert's attorney nor the court advised Evert that the results of a polygraph test, in Montana, are inadmissible in court.

¶8    On September 4, 1997, the rescheduled sentencing hearing took place, during which the results of the polygraph test were of primary concern. The court had before it

3

the pre-sentence investigation report which recommended a fifty-year sentence with ten years suspended. Attached to the report, but not used or incorporated therein, was the sex offender evaluation which included several references to the results of the polygraph examination, and in particular referenced Evert's confession that he had sexual intercourse with his daughter. The county attorney followed the pre-sentence report and recommended a sentence of fifty years with ten suspended. In defending the sentence recommendation, the county attorney noted that the investigator prepared the report before he was aware of "the incident with [Evert's] daughter." The court itself repeatedly mentioned Evert's confession of intercourse with his daughter. The court, for example, asked Evert whether he would have admitted the incident to the court if the sex offender evaluation had never occurred. Additionally the court, when pronouncing the sentence, noted that, in addition to the multiple prior felonies on Evert's record, he had two felonies for which he had not been charged, namely "bail jumping" (referring to his flight from the Butte treatment center), and sexual intercourse with his underage daughter.

¶9 Shortly after judgment was issued, Evert's original attorney withdrew from representing Evert. Evert did not appeal his conviction or sentence. On June 30, 1998, however, Evert filed a *pro se* petition for postconviction relief. Evert alleged numerous claims related to his guilty plea and sentencing. The District Court eventually appointed counsel to represent Evert in the postconviction proceedings. The new counsel, while incorporating Evert's original claims, added one claim, improper use of the results of the polygraph test at sentencing, in what was titled a "supplemental petition." During the

4

time set for a hearing on the petition, Evert and the county attorney, with leave of the court, entered into an agreement whereby Evert would be re-sentenced in consideration for withdrawing his eight claims for postconviction relief. The court did not, some five years after the original sentence and absent any showing of error or illegality, have continuing jurisdiction to resentence Evert. We therefore reversed and remanded for consideration of Evert's petition for postconviction relief. *See State v. Evert*, 2004 MT 178, 322 Mont. 105, 93 P.3d 1254.

¶10 Once back in District Court, Evert, now represented by the Appellate Defender's Office, sought leave to amend his petition. The State did not object to the amendment, and the court granted Evert's request on January 31, 2005. Evert's amended petition dropped four claims and presented four amended claims: that his plea was involuntary; that the State breached the plea agreement; that the polygraph test results were improperly introduced at sentencing; and that the polygraph test was a violation of Evert's right against self-incrimination.

¶11 Despite its initial order granting the amended petition, the District Court held that it would not consider Evert's amended claims because the issues were not raised in Evert's direct appeal, and thus were procedurally barred under § 46-21-105(2), MCA, and because the petition was a second or subsequent petition, in violation of § 46-21-105(1), MCA. The court went on to dismiss Evert's original postconviction claims based on procedural grounds and the failure to factually support the claims. Evert now appeals the court's denial of his petition.

**STANDARD OF REVIEW**

¶12     We review the denial of a petition for postconviction relief to determine whether the district court's findings of fact are clearly erroneous and whether its conclusions of law are correct. Discretionary rulings, including rulings relating to whether to hold an evidentiary hearing, are reviewed for abuse of discretion. *State v. Hanson*, 1999 MT 226, ¶ 9, 296 Mont. 82, ¶ 9, 988 P.2d 299, ¶ 9 (citations omitted).

**DISCUSSION**

¶13     **Did the District Court err in dismissing Evert's petition for postconviction relief?**

¶14     A petitioner may only amend his petition for postconviction relief once. Section 46-21-105(1)(a), MCA, provides that "[a]ll grounds for relief claimed [in a petition for postconviction relief] must be raised in the original or amended petition." Section 46-21-105(1)(b), MCA, specifies that a court "shall dismiss a second or subsequent petition by a person who has filed an original petition unless the second or subsequent petition raises grounds for relief that could not reasonably have been raised in the original or an amended original petition."

¶15     Also, claims that could have been raised on direct appeal are barred from review under a petition for postconviction relief. Section 46-21-105(2), MCA, provides:

> When a petitioner has been *afforded the opportunity* for a direct appeal of the petitioner's conviction, grounds for relief that were or *could reasonably have been raised* on direct appeal may not be raised, considered, or decided in [a petition for postconviction relief]. [Emphasis added.]

6

¶16    A claim based on facts of record in the underlying case must be raised in a direct appeal, while claims which cannot be documented from the record in the underlying case are appropriate for review under postconviction relief. *Hagen v. State*, 1999 MT 8, ¶ 12, 293 Mont. 60, ¶ 12, 973 P.2d 233, ¶ 12. This procedural bar also applies to issues which were not properly preserved at the trial level for appeal. *State v. Baker*, 272 Mont. 273, 281, 901 P.2d 54, 58 (1995) (citations omitted). Further, unless a postconviction petitioner can demonstrate a fundamental miscarriage of justice, we will consistently apply the procedural bar. *Baker*, 272 Mont. at 281, 901 P.2d at 59 (citations omitted). However, the miscarriage of justice exception does not apply to claims unless they allege newly discovered evidence which would establish that the defendant did not commit the offense. *State v. Nichols*, 1999 MT 212, ¶ 20, 295 Mont. 489, ¶ 20, 986 P.2d 1093, ¶ 20 (citations omitted).

¶17    Here, the District Court concluded that Evert's "amended" petition was a procedurally barred second or subsequent petition because Evert had already amended the petition once when his previous attorney filed the "supplemental petition." The court also noted that all claims that Evert could have appealed were barred from review under postconviction relief. Therefore, the court considered only Evert's original petition and the claims therein, concluding that all claims should either have been appealed or were not substantiated. Evert only appeals the court's denial of the claims made in the "amended" petition.

¶18 Since we conclude that the appealed claims in the "amended" petition are procedurally barred by § 46-21-105(2), MCA, as claims that could have been, but were not, directly appealed, we decline to address whether Evert's "amended" petition for postconviction relief is a second or subsequent petition. We separately analyze each claim below.

¶19 *A. Was Evert's guilty plea voluntary*?

¶20 Evert claims that he entered the plea agreement with the understanding that the goal of the agreement was to place him in community-based treatment. Once he absconded from treatment in Butte, the county attorney considered community treatment "off the table" and accordingly did not advocate for community treatment at sentencing. Evert asserts that he was never told that community treatment would no longer be an option if he fled, and therefore he pled guilty without full knowledge of the consequences of that plea. In support of his argument, Evert cites to the terms of the plea agreement as well as the actions of the county attorney at the two sentencing hearings.

¶21 Because the plea agreement and the transcript of the sentencing hearings are of record and form the basis of Evert's involuntary plea claim, the claim is procedurally barred under § 46-21-105(2), MCA, as a claim that could have been raised on direct appeal.

¶22 *B. Did the county attorney breach the terms of the plea agreement?*

¶23 Evert also claims that the county attorney, by advocating for a harsher sentence that did not include the possibility of community-based treatment, effectively breached

8

the terms of the plea agreement. Evert relies on the language of the plea agreement, including certain handwritten lines which all parties initialed. Even after he fled from treatment, Evert apparently thought the agreement required the county attorney to advocate for community treatment or rescind the agreement, thereby allowing Evert to withdraw his guilty plea. The agreement, according to the State, allowed it to discard community treatment after Evert fled, but still required the State to recommend the sentence proposed by the pre-sentence investigative report.

¶24 According to Evert, this disagreement concerning the terms and intent of the plea agreement requires inquiry outside of the record. Further, Evert argues that he could not have raised the breach issue on appeal because he failed to raise the issue at the District Court level.

¶25 We disagree with Evert's logic. As noted above, the procedural bar applies to issues that were not properly preserved for appeal in the District Court. *See Baker*, 272 Mont. at 281, 901 P.2d at 58. The very fact that Evert failed to object to the State's sentence recommendation as a breach of the plea agreement thus bars the issue from consideration under postconviction relief. Further, the plea agreement, including the handwritten, but legible, portions, Evert's escape from treatment, and the county attorney's actions at both sentencing hearings are all of record. As such, Evert's breach claim is procedurally barred under § 46-21-105(2), MCA, as a claim that could have been raised on direct appeal.

*¶26    C. Were the results of a polygraph test impermissibly considered at Evert's*

*sentencing?*

¶27    Finally, Evert claims that his sentencing was flawed because evidence obtained

through the use of polygraph testing was admitted and considered by the court, contrary

to Montana law and in violation of his right against self-incrimination.  While Evert

resisted taking the polygraph test, his attorney told him, by letter, that he had to take, and

pass, the polygraph test if he hoped to obtain community-based treatment.  The polygraph

test was subsequently integrated into the sex offender evaluation.  The county attorney

specifically referenced Evert's admission that he had intercourse with his underage

daughter, and the court not only cross-examined Evert concerning the incident, but relied

on it as evidence that Evert's long prison sentence was justified.

¶28    Evert argues that postconviction is the proper proceeding in which to bring the

polygraph claim because the damaging information obtained from the polygraph test was

integrated into the sexual offender evaluation and postconviction is the only forum where

those results can be fully explored.  Additionally, Evert asserts that he could not have

raised the issue on appeal because he did not contemporaneously object below.

¶29    Again, we disagree.  As explained in part B, the very fact that Evert failed to

object to the District Court bars the issue from consideration under postconviction relief.[1]

Additionally, it is well documented in the record, primarily in the sentencing transcript

---

[1]The claim is not subject to the *Lenihan* exception because it is an evidentiary
issue as opposed to an allegation that the sentence is illegal or exceeds statutory
authority.  *See State v. Brister*, 2002 MT 13, ¶ 16, 308 Mont. 154, ¶ 16, 41 P.3d 314,
¶ 16.

10

and the sex offender evaluation, that the results of the polygraph test were considered at sentencing. While we do not condone the use of the polygraph test results at sentencing (*see State v. Anderson*, 1999 MT 58, ¶ 12, 293 Mont. 472, ¶ 12, 977 P.2d 315, ¶ 12), and in fact admonish the District Court and county attorney against using the results of a polygraph test at any phase of sentencing, including in the sex offender evaluation, we nonetheless are barred from considering Evert's claim because it could have been raised on direct appeal.

## CONCLUSION

¶30    Because all of the claims that Evert appealed are procedurally barred under § 46-21-105(2), MCA, as claims that could have been raised on direct appeal, we affirm the District Court's denial of Evert's petition for postconviction relief.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS